UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

                         - against -

ANTHONY PANDRELLA,

                             Defendant.

**ORDER**
19-CR-122 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        On March 7, 2019, Defendant Anthony Pandrella was indicted for Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), unlawful use, brandishing, and discharge of a firearm in violation of 18 U.S.C. § 924(c), and causing death through use of a firearm in violation of 18 U.S.C. § 924(j) stemming from his alleged murder of Vincent Zito during the robbery of Zito's loan business on October 26, 2018.  (Indictment 1–2, Docket Entry No. 1.)  Pandrella pled not guilty.  (Min. Entry dated Mar. 14, 2019, Docket Entry No. 4.)  On October 29, 2020, the government moved to compel Pandrella to provide notice of any intended alibi pursuant to Rule 12.1(a) of the Federal Rules of Criminal Procedure, (Gov't Mot. to Compel ("Gov't Mot."), Docket Entry No. 57), and on April 2, 2021, the government supplemented its motion, (Letter dated Apr. 2, 2021 ("Gov't Suppl. Mot."), Docket Entry No. 82).  Pandrella opposes both the government's motion and its supplemental demand.  (Def.'s Opp'n to Gov't Mot. ("Def.'s Opp'n"), Docket Entry No. 58; Letter dated Apr. 3, 2021 ("Def.'s Suppl. Opp'n"), Docket Entry No. 83.)

        For the reasons discussed below, the Court grants the government's motion.

**I. Background**

On September 10, 2020, pursuant to Federal Rule of Criminal Procedure 12.1(a), the government requested in writing that Pandrella provide written notice within fourteen days of any intended alibi defense stating "the specific place or places at which [Pandrella] claims to have been during the time of the alleged offenses, and the names, addresses and telephone numbers of each witness upon whom [he] intends to rely." (Letter dated Sept. 10, 2020, at 1, annexed to Gov't Mot. as Ex. A, Docket Entry No. 57-1.) The government's request specified that the alleged offenses of "robbery, use of a firearm, and murder — including the preparation for, commission of, flight from, and cover-up of such crimes — took place . . . on October 26, 2018," across sixteen locations and approximate times. (*Id.* at 1–2.) On September 18, 2020, Pandrella responded that the government's demand for sixteen separate alibi defenses was improper and "far beyond the scope" of what is required by Rule 12.1. (Def.'s Opp'n 2.) Sometime thereafter, Pandrella inquired as to the government's position on the time of the murder and the government replied that it would establish that Pandrella shot the victim between 8:10 AM and 10:23 AM on October 26, 2018. (*Id.* at 1; Gov't Mot. 2.) On October 29, 2020, Pandrella reiterated his position that "the government's request goes far beyond what Rule 12.1 requires." (Gov't Mot. 2.) Later that day, the government moved to compel Pandrella to provide notice of any intended alibi evidence pursuant to Rule 12.1. (*Id.*) In opposing the government's motion, Pandrella argued that of the sixteen times and locations identified in the government's September 10, 2020 letter, only its demand for notice of alibi as to his whereabouts between 8:10 AM and 10:23 AM is valid, since that is the time period in which the government contends the alleged offenses occurred. (Def.'s Opp'n 3.) However, Pandrella stated that he "has no intention of denying his presence at the victim's home at that time." (*Id.*) Rather, he argued that "[t]he

issue at trial will be whether the victim was murdered before or after 10:23 [AM]." (*Id.*) On April 1, 2021, in view of Pandrella's suggestion that he intends to assert at trial that the alleged offenses occurred between 10:23 AM and 3:08 PM, the government served Pandrella with a supplemental demand for notice of alibi with respect to that time. (Gov't Suppl. Mot. 1–2.) In response, Pandrella argues that "[t]he government has at all times stated that the time, date and place of the charged robbery/murder here was between the hours of [8:10 AM] and 10:23 [AM]," and there is "no basis" for the government's supplemental demand "[u]nless the government is now stating that the robbery/murder took place between the hours of 10:24 [AM] and 3:08 [PM]." (Def.'s Suppl. Opp'n.)

## II. Discussion

### a. Standard

Under Rule 12.1(a) of the Federal Rules of Criminal Procedure, "[a]n attorney for the government may request in writing that the defendant notify an attorney for the government of any intended alibi defense," and "[t]he request must state the time, date, and place of the alleged offense." Fed. R. Crim. P. 12.1(a)(1). "[A] defendant need not disclose [his] intent to offer an alibi defense unless and until the Government submits a written request specifying the time, date and place of the alleged offense." *United States v. Saa*, 859 F.2d 1067, 1072 (2d Cir. 1988). Once the government submits such a request, then "[w]ithin [fourteen] days after the request, or at some other time the court sets, the defendant must serve written notice on an attorney for the government of any intended alibi defense," and such notice "must state (A) each specific place where the defendant claims to have been at the time of the alleged offense; and (B) the name, address, and telephone number of each alibi witness on whom the defendant intends to rely." Fed. R. Crim. P. 12.1(a)(2); *Saa*, 859 F.2d at 1072. "If a party fails to comply with this rule, the

court may exclude the testimony of any undisclosed witness regarding the defendant's alibi," however "[t]his rule does not limit the defendant's right to testify." Fed. R. Crim. P. 12.1(e).

Without advance notice of alibi witnesses and "the details of the claimed alibi[,] [t]he result often is an unnecessary interruption and delay in the trial to enable the government to conduct an appropriate investigation." Fed. R. Crim. P. 12.1 advisory committee's 1974 notes. Thus, "[t]he objective of [R]ule 12.1 is to prevent this by providing a mechanism which will enable the parties to have specific information in advance of trial to prepare to meet the issue of alibi during the trial." *Id.* The rule is "prosecution-triggered" because "[t]he major purpose of a notice-of-alibi rule is to prevent unfair surprise to the prosecution." Fed. R. Crim. P. 12.1 judiciary committee's notes to the 1975 amendment ("If the prosecution is worried about being surprised by an alibi defense, it can trigger the alibi defense discovery procedures."). "Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Williams v. Florida*, 399 U.S. 78, 81 (1970). "Notice-of-alibi rules . . . are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial." *Wardius v. Oregon*, 412 U.S. 470, 473 (1973).

    b. **Government's requests for alibi information**

        i. **Pandrella must provide notice of any intended alibi premised on physical impossibility for the times and locations requested**

The government requests that the Court compel Pandrella to provide notice of any intended alibi defense as to "each specific place where [he] claims to have been at the time of the robbery and murder of Vincent Zito, including the preparation for, commission of, flight from, and cover-up of these crimes," which the government's initial demand letter specifies occurred

4

across sixteen times and locations on October 26, 2018. (Gov't Mot. 5; Letter dated Sept. 10, 2020.) In support of this request, the government argues that Rule 12.1 "is construed broadly to require notice-of-alibi even as to discrete acts within a criminal transaction." (Gov't Mot. 4 (citing *United States v. Martoma*, No. 12-CR-973, 2014 WL 31700, at *4–6 (S.D.N.Y. Jan. 6, 2014)).) Although "the government is not aware of the Second Circuit having directly addressed this issue," it argues that "other circuit courts have 'recognize[d] it to be permissible and consistent with [Rule 12.1's] purpose for the prosecution to seek notice-of-alibi with respect to a discrete temporal aspect' of 'an entire criminal transaction,' even where the crime was 'accomplished over a long period of time.'" (*Id.* at 4–5 (alterations in original) (quoting *United States v. Vela*, 673 F.2d 86, 88–89 (5th Cir. 1982)) (first citing *United States v. Dupuy*, 760 F.2d 1492, 1498–99 (9th Cir. 1985); and then citing *United States v. Taylor*, 652 F. App'x 902, 907 (11th Cir. 2016)).) Therefore, the government argues, because the government requested that Pandrella "notify the government of any intended alibi defense as to each stage of his crimes, including the preparation for, commission of, flight from, and cover-up of his crimes," and because the government "has provided . . . all of the information required under Rule 12.1(a) and more, thus triggering [Pandrella's] obligation to disclose his intent to offer any alibi defense," the Court should grant the government's motion. (*Id.* at 5–6.) Finally, the government argues that Pandrella cannot "avoid disclosure of his alibis by suggesting that he has a temporal defense based on the victim's time of death [or] by neglecting to acknowledge that he is charged with murder *and* robbery, and the continuing nature of those crimes." (Gov't Reply in Supp. of Mot. to Compel ("Gov't Reply") 2, Docket Entry No. 60.) The government argues that, notwithstanding Pandrella's temporal defense, if he "intends to argue that he was elsewhere when the charged crime was committed, he must so disclose." (*Id.*) Further, Pandrella's framing

5

of 10:23 AM as "the dividing line between what is and what is not relevant to an alibi defense overlooks entirely that he also has been charged with Hobbs Act robbery," the escape phase of which "is part of the robbery," therefore if he "intends to argue that it was a 'physical impossibility' for him to be engaged in the preparation for, commission of, flight from, and cover-up of his crimes because he 'was elsewhere,' he must so disclose." (*Id.* at 2–3.)

Pandrella argues that when he "asked the government for its view of the time, date and place of the charged robbery, use of a firearm and murder,"[1] the government responded that it would "establish that [Pandrella] shot the victim in the head between 8:10 [AM] and 10:23 [AM]." (Def.'s Opp'n 1.) Therefore, Pandrella argues, of the sixteen times and locations specified in the government's demand letter, only the demand related to his whereabouts at that time could be related to an alibi under Rule 12.1. (*Id.* at 3.) However, Pandrella argues that he "has no intention of denying his presence at the victim's home at that time." (*Id.*) Rather, he argues that "[t]he issue at trial will be whether the victim was murdered before or after 10:23 [AM]" — that is, *after* surveillance footage depicts him leaving the victim's home. (*See id.*) In addition, Pandrella argues that the in-Circuit authorities the government cites are inapposite because they involved the question of whether the government may obtain "notice of an alibi that [a defendant] intends to assert with respect to a critical incident that allegedly is part of the conspiracy charged in the [i]ndictment," but Pandrella is not charged with conspiracy. (*Id.*)

---

[1] The government notes that Pandrella "only asked for 'the government's view of time of death,' and the government responded accordingly. The government did not indicate, as [Pandrella] now suggests, that all three crimes were completed by 10:23 [AM]. They were not." (Gov't Reply 3 n.1.)

The Second Circuit has not addressed whether Rule 12.1 encompasses requests for notice of alibi as to "discrete temporal aspects" of a charged crime, such as the preparation for, flight from, or cover-up of a crime. However, the cases the government cites are instructive.

In *United States v. Vela*, the defendant was charged with conspiracy to possess with intent to distribute cocaine. 673 F.2d at 87. In the government's request for notice of alibi, the government specified that the alleged offense "was ultimately consummated on June 20, 1980," and that the defendant travelled to several named locations "from approximately 5:30 [PM] to 8:30 [PM] on said date." *Id.* at 88. At trial, a witness for the government testified that a course of negotiations with the defendant had occurred over a period of several days, culminating in the defendant's delivery to him of a cocaine sample on the afternoon of June 20, 1980, and that the main shipment of cocaine occurred that evening. *Id.* at 87. The defendant argued that "his movements during the crucial evening hours of June 20, 1980, were covered by an alibi." *Id.* On appeal from his conviction, the defendant argued that the government's Rule 12.1 request for notice of alibi "led him to believe that the government only intended to establish criminal acts occurring between 5:30 [AM] and 8:30 [PM]," and thus "evidence of criminal acts occurring during other times should not have been admitted." *Id.* at 88. The Fifth Circuit noted that "[m]any crimes, such as the conspiracy charged here, are accomplished over a long period of time," and that "[i]n such cases, it would render the rule unworkable if the prosecution could not narrow its notice-of-alibi demand to a more limited interval." 673 F.2d at 88–89. The court thus "recognize[d] it to be permissible and consistent with the rule's purpose for the prosecution to seek notice-of-alibi with respect to a discrete temporal aspect of the crime charged." *Id.* at 89.

Similarly, in *United States v. Dupuy*, the defendant was charged with conspiracy to possess with intent to distribute marijuana, and the indictment alleged that he had committed an

7

overt act in furtherance of the conspiracy on September 1, 1980. 760 F.2d at 1495, 1498. The government requested that the defendant disclose any alibi defense as to the overt act, but the government's Rule 12.1(a) request stated that the overt act occurred on August 31, rather than September 1. *Id.* at 1498. At trial, an informant testified for the government that the overt act "had occurred on August 30 (not September 1 as alleged in the indictment or August 31 as stated in the notice to [the defendant])." *Id.* Defense counsel requested a continuance to permit him to go to Mexico and locate relatives of the defendant to support his alibi defense for August 30. *Id.* The trial court denied the request and a jury found the defendant guilty. *See id.* at 1496. On appeal, the defendant argued that the trial court's failure to grant a continuance, strike the informant's testimony, or grant other sanctions for the government's alleged Rule 12.1 violation denied him his Fifth and Sixth Amendment rights. *Id.* The Ninth Circuit stated that the defendant "seem[s] to read the Rule 12.1 request as though it were a bill of particulars which limits the charges as to the time, place, and date indicated on the Government's request for notice-of-alibi." *Id.* at 1498. However, the court stated that *Vela* "is precisely [o]n point," and that the government was not limited to proof of events that took place during the time frame indicated in its Rule 12.1 request. *Id.* at 1499. The court explained that the government's request did not limit the defendant to producing alibi evidence for only that time frame; rather, "[h]e was free to bring forth any alibi witnesses he deemed appropriate for the other days encompassed by the charges against him," and because the government did not include those other days in its Rule 12.1 request, it would not have been able to claim unfair surprise in that event. *Id.*

Finally, at least one court in this circuit has concluded that "[t]he reasoning of *Vela* and *Dupuy* appears sound," despite the fact that alibi evidence relating to a discrete temporal aspect

8

of the alleged offense "would not constitute a complete defense to any of the charges, but would simply rebut one aspect of the Government's evidentiary presentation." *Martoma*, 2014 WL 31700, at *4–6 (ordering the defendant to provide notice of intent to offer alibi evidence as to a meeting relevant to the government's theory in securities fraud conspiracy case even though government was not required to prove the defendant's presence at the meeting).

Although the above cases all involved charges of conspiracy, they stand for the proposition that it is consistent with Rule 12.1's purpose of avoiding surprise to the prosecution and delay to require notice of alibi for discrete temporal aspects of a charged offense where the government requests such notice. Further, as the government notes, Pandrella is charged with both murder and Hobbs Act robbery, and, as the Second Circuit has explained, "a robbery involves 'both a taking and a carrying away,' so that the 'escape phase of a crime is not . . . an event occurring "after the robbery"' but 'is *part of the robbery*.'" *United States v. Zayac*, 765 F.3d 112, 122 (2d Cir. 2014) (quoting *United States v. Reid*, 517 F.2d 953, 965 (2d Cir. 1975)). Accordingly, if Pandrella intends to offer alibi evidence at trial that it was physically impossible for him to be engaged in the preparation for, commission of, flight from, or cover-up of the alleged crimes because he was somewhere other than the locations the government has identified at the times it has identified, he must provide notice of such evidence.

### ii. Pandrella must provide notice of any intended alibi premised on psychological impossibility

The government argues that Rule 12.1 requires Pandrella to provide "the name, address, and telephone number of each alibi witness on whom [he] intends to rely, including any witness [he] intends to call to suggest that [his] behavior at or near the time of the crime was inconsistent with him committing the crimes (*i.e.*, a 'psychological impossibility' alibi defense)." (Gov't Mot. 9.) Relying on *United States v. Ford*, 683 F.3d 761 (7th Cir. 2012), the government argues

9

that "[t]he opportunity for fabrication and need for pre-trial investigation applies equally to both 'alibi evidence premised on psychological impossibility' and the 'more common type' of alibi defense based on physical location." (*Id.* at 5 (quoting *Ford*, 683 F.3d at 764).) Thus, the government argues, "courts enforce Rule 12.1 where a defendant intends to present evidence of his behavior near the time of the crime in order to argue that it was 'psychologically impossible' for him to have committed the crime without being visibly agitated or otherwise affected when viewed by others close in time to the crime." (*Id.* (citing *Ford*, 683 F.3d at 764); Gov't Reply 4 (same).) In support, the government argues that "both in and out-of-circuit rulings on Rule 12.1 motions are consistent with the principles that underlie *Ford*, namely that notice to the prosecution of proposed alibi evidence — in whatever its form — 'is required because an alibi defense is at once compelling if accepted and easy to concoct, so the prosecution is justified in wanting an opportunity to investigate it in advance of trial.'" (Gov't Reply 4 (quoting *Ford*, 683 F.3d at 764) (first citing *Williams*, 399 U.S. at 81; and then citing *Belton v. Blaisdell*, 559 F. Supp. 2d 128 (D.N.H. 2008)).)

Pandrella argues that the government has a "basic misunderstanding about what an alibi defense is," as Black's Law Dictionary defines "alibi" as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time" or "[t]he quality, state or condition of having been elsewhere when an offense was committed" and does not include in its definition a defense based on psychological impossibility. (Def.'s Opp'n 2 (quoting *Alibi*, Black's Law Dictionary).) Pandrella argues that no court in this circuit or any other circuit has embraced *Ford*'s reasoning, as the *Ford* panel's pronouncement that Rule 12.1 encompasses alibi evidence premised on psychological impossibility is unprecedented and unsupported. (*Id.* at 3 n.1.) In addition, he

argues that this pronouncement was dicta because the court concluded that, under the circumstances of the case, the alibi testimony "would have had no probative value" and thus would not have been admissible as evidence. (*Id.* (quoting *Ford*, 683 F.3d at 763–64).)

In *United States v. Ford*, "[t]he defendant was a personal trainer in Chicago" who "had an appointment for a training session with one of his clients that began two hours after [the defendant robbed a bank]." 683 F.3d at 763. At trial, the defendant sought to call his client as a witness to testify that "the defendant was 'calm, friendly and professional' at *all* their training sessions . . . , and that he would not have been calm, etc., had he committed an armed bank robbery only two hours earlier." *Id.* The district court excluded the witness "on the ground that he was an alibi witness and the defense had not given the prosecution the notice required before trial by [Rule 12.1]." *Id.* at 763. "A jury convicted the defendant of armed bank robbery . . . ." *Id.* On appeal, "the defendant argue[d] that the witness he wanted to call was not an alibi witness and so the rule [did not] apply." *Id.* The Seventh Circuit concluded that while "such testimony would have had no probative value" in that particular case — because no one would expect the defendant, who was an experienced, eleven-time bank robber, to have been visibly agitated "two hours later, far from the scene" of an apparently successful robbery in which no one had been hurt and which had lasted only five minutes — "[i]n any event it *was* alibi evidence . . . , albeit alibi evidence of an unusual sort," because the alibi "would have been that it was *psychologically* impossible for [the defendant] to have committed the crime, because had he done so he would have been visibly agitated two hours later[,] yet the alibi witness would have testified that he was never visibly agitated at their training sessions." *Id.* In reaching its conclusion, the court reasoned that "[n]otice to the prosecution of proposed alibi evidence is required because an alibi defense is at once compelling if accepted and easy to concoct, so the prosecution is justified in

11

wanting an opportunity to investigate it in advance of trial." *Id.* at 764 (first citing *Williams*, 399 U.S. at 81; and then citing *United States v. Pearson*, 159 F.3d 480, 483 (10th Cir. 1998)). Because "[t]hat is true of alibi evidence premised on psychological impossibility as well as the more common type," the court concluded that "the district judge was right to exclude the evidence because of the defendant's failure to have complied with Rule 12.1(a)." *Id.*

Although, as Pandrella argues, *Ford* appears to be the only case in which a court has recognized a "psychological impossibility" alibi, *Ford*'s reasoning is consistent with the purpose of notice-of-alibi rules as discussed both by the Supreme Court and the Advisory Committee on Rules of Criminal Procedure — namely, preventing unfair surprise to the prosecution and unnecessary interruption and delay at trial. *See* Fed. R. Crim. P. 12.1 advisory committee's 1974 notes; *see also Williams*, 399 U.S. at 81; *Wardius*, 412 U.S. at 473. Further, Pandrella's argument that the Seventh Circuit's Rule 12.1 pronouncement was dicta is unpersuasive. Although in *Ford*, alibi evidence that the defendant was not visibly agitated two hours after the robbery would have had "no probative value," given, among other things, the defendant's experience robbing banks, such evidence would have probative value in this case, where the government argues that Pandrella violently murdered a friend of many years by shooting him in the back of the head, (*see, e.g.*, Gov't Mem. in Supp. of Pretrial Detention 5, Docket Entry No. 7), and where Pandrella has repeatedly argued that he is not a violent person, (*see, e.g.*, Def.'s Resp. in Supp. of Def.'s Bond Mot. 5, Docket Entry No. 38 ("Pandrella has no priors whatsoever, let alone[] one involving a single act of prior violence."); Def.'s Bond Mot. 5, Docket Entry No. 34 (same).) Accordingly, the Court grants the government's motion with respect to any intended alibi evidence of psychological impossibility. If Pandrella intends to

offer alibi evidence of psychological impossibility, he must provide written notice to the government of such pursuant to Rule 12.1 as requested to allow it to prepare for trial.

### iii. Pandrella must provide notice of alibi with respect to the government's supplemental demand

The government argues that if Pandrella, as he suggests,[2] "intends to argue that the alleged offenses occurred between 10:23 [AM] and 3:08 [PM], and that he was somewhere other than the victim's home during that time period, that constitutes an alibi defense" based on physical impossibility and, as such, falls "squarely" within Rule 12.1(a)." (Gov't Suppl. Mot. 1; Gov't Letter to Def. dated Apr. 1, 2021, annexed to Gov't Suppl. Mot. as Ex. A, Docket Entry No. 82.)

Pandrella argues that "[t]he government has at all times stated that the time, date and place of the charged robbery/murder . . . was between the hours of 8:40 [AM] and 10:23 [AM] on October 26, 2018, at the victim's residence"; therefore, "[u]nless the government is now stating that the robbery/murder took place between the hours of 10:24 [AM] and 3:08 [PM] — there is no basis for their 'supplemental demand.'" (Def.'s Suppl. Opp'n.)

The Court grants the government's supplemental request. In light of Pandrella's apparent

---

[2] In his recent motion for pretrial release, Pandrella states that he "has argued all along that [the victim] was alive when [he] left [the victim]" at 10:23 AM. (Def.'s Mot. for Bond, Docket Entry No. 79 (citing Def.'s Opp'n 3); *see also* Def.'s Opp'n 3 (stating that Pandrella has "no intention of denying his presence at the victim's home [between 8:10 AM and 10:23 AM]").) The government argues that these representations, coupled with Pandrella's indication that he "may seek to present as a defense an argument that a perpetrator could have committed the alleged offenses by entering the victim's home without being detected by the home security cameras," evince an intent to argue that the alleged offenses occurred between 10:23 AM and 3:08 PM. (Gov't Suppl. Mot. 1; Gov't Letter to Def. dated Apr. 1, 2021, annexed to Gov't Suppl. Mot. as Ex. A, at 1, Docket Entry No. 82; *see also* Def.'s Letter dated Mar. 6, 2020, at 2, Docket Entry No. 31 (requesting Court's permission "to conduct an in-person inspection of [the victim's four-floor home] . . . to determine whether there are other points of entry into the victim's [second-floor] apartment . . . from the inside of the home," out of view of the video surveillance camera covering the outside entry door to his second-floor apartment).)

intention to argue that the alleged offenses occurred between 10:24 AM and 3:08 PM on October 26, 2018, and that he was elsewhere during that time, it is permissible and consistent with the purpose of Rule 12.1 for the government to seek notice of alibi with respect to this time period to avoid surprise and delay at trial.[3] *See Dupuy*, 760 F.2d at 1499 ("If the Government does not take advantage of Rule 12.1 as to a particular time, date and place[,] it cannot claim unfair surprise when the defense brings forth alibi witnesses at trial."); *United States v. Bouye*, 688 F.2d 471, 475 (7th Cir. 1982) ("The government, should it so desire, has the ability to obtain advance notice of an alibi defense in order to avoid unfair surprise and delays at trial. If the government fails to trigger the procedures, and if the defendant raises an alibi at trial, then the government cannot claim surprise and get a continuance of the trial." (citations omitted)).

### III. Conclusion

Accordingly, for the reasons explained above, the Court grants the government's motion to compel alibi evidence, including its supplemental demand, and directs Pandrella to provide notice of the requested alibi evidence within fourteen days of this Order.

Dated: April 20, 2021
       Brooklyn, New York

                              SO ORDERED:

                                s/ MKB
                            MARGO K. BRODIE
                            United States District Judge

---

[3] The Court notes that the government's initial demand letter sought notice of alibi with respect to several discrete time periods covering the period from 10:24 AM to 3:08 PM.